IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE C. BENCKINI | : | CIVIL ACTION |
| t/a | : | |
| BENCKINI NURSERIES, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| COOPERSBURG BOROUGH et al., | : | |
| Defendants | : | NO. 05-5122 |

**MEMORANDUM AND ORDER**

Gene E. K. Pratter, J.                                                                                                  August 18, 2006

Pro se Plaintiff Gene C. Benckini, a frequent litigant in this Court, has sued the Coopersburg Borough, Coopersburg Police Officers Daniel Trexler, Herb Hevener, Joseph Hetten, Jason Leindecker, Jeffrey Tapler, William Nahrgang, Matt Hinkel, and the Mayor of Coopersburg[1] (hereinafter "Coopersburg Defendants").  Mr. Benckini also brings suit against Lehigh County's Chief Deputy District Attorney, Matthew D. Weintraub.  When viewing his Complaint generously, Mr. Benckini alleges various civil rights violations pursuant to 42 U.S.C. § 1983, a wrongful death claim arising under state law, and a slander claim under state law.  Presently before this Court are motions to dismiss submitted by both the Coopersburg Defendants and Mr. Weintraub, Mr. Benckni's responses,[2] and a Motion to Amend the Complaint filed by Mr. Benckini.  As the Defendants have correctly contended, the doctrine of res judicata, principles of absolute prosecutorial immunity and the applicable statute of

---

[1]   In his Complaint, Mr. Benckini does not state the name of the Mayor of Coopersburg.

[2]   Mr. Benckini's responses to the Motions to Dismiss are essentially renewed pleadings of the merits of his Complaint.  His responses include little substantive content.  Therefore, the Court focuses on the merits of the Defendants' Motions to Dismiss and, of course, the Complaint.

limitations mandate that most of the allegations in Mr. Benckini's Complaint be dismissed, leaving only the § 1983 claims against the Coopersburg Defendants in paragraphs 27 and 28 of the Complaint and the wrongful death claim in paragraph 32 of the Complaint.[3]

## I.  FACTUAL BACKGROUND

Mr. Benckini's Complaint chronicles chapters of his life dating back to 1985, alleging actions taken by the Coopersburg Borough, Coopersburg police officers, the Mayor of Coopersburg, and Chief Deputy District Attorney Matthew D. Weintraub based on "a long history of hatred for the Plaintiff." Complaint ¶ 10. Mr. Benckini alleges that the Coopersburg Police Department (hereinafter "the CPD") "aided, abetted, and participated in a criminal cover-

---

[3]  When afforded a generous interpretation, paragraphs 23, 24, 25, and 32 of Mr. Benckini's Complaint may set forth a wrongful death claim against the Coopersburg Defendants. Specifically, in paragraph 32 of Mr. Benckini's Complaint, under the heading, "Count One," Mr. Benckini asserts:

> Defendants, aforesaid actions were outrageous, intentional, willful, wanton, reckless, and disregard for Plaintiff's rights and the wronful [sic] death of Plaintiff's wonderful mother, who was forced out of Plaintiff's home and into a retirement center with strangers where she died of a broken heart, the Plaintiff suffered physical pain, anxiety, distress, anguish, humiliation, sleepless nites [sic], loss of business, loss of income, Plaintiff seeks damages in excess of 3.5 million dollars.

Mr. Benckini made the same claim against Chief Deputy District Attorney Matthew D. Weintraub, in Benckini v. Ford, No. 05-1417, 2005 U.S. Dist. LEXIS 11883, at *13 (E.D. Pa. June 16, 2005), one of the prior suits that Mr. Benckini brought before Judge Berle M. Schiller. In that case, Judge Schiller promptly disposed of the claim. In response to Mr. Weintraub's assertion in his Motion to Dismiss in that case that Mr. Benckini's wrongful death claim should be dismissed for failure to state a claim upon which relief can be granted, Judge Schiller noted that Mr. Benckini's "claim that his mother died of a broken heart as a result of Defendants' actions is simply not cognizable under Pennsylvania's wrongful death statute," and therefore must be dismissed. Id.

Unlike Mr. Weintraub both as a defendant in the present action and in the action before Judge Schiller, the Coopersburg Defendants did not address Mr. Benckini's wrongful death claim in their Motion to Dismiss. Therefore, because the Complaint when viewed generously may be asserting a wrongful death claim against the Coopersburg Defendants to which they have not responded, the Court will reserve judgment on the merits of this claim.

up" involving a hit and run accident that took place in 1985. Id. ¶ 10. He also claims that in 1994 the CPD falsely arrested Mr. Benckini and at his trial "condoned, aided, abetted, and encouraged and participated in false police reports." Id. ¶ 12. Mr. Benckini also alleges that the CPD falsely arrested him in a pizza shop in 1994, id. ¶ 13, and that on three occasions in May 1997, the CPD refused to allow Mr. Benckini to file charges for stalking, assault, and harassment against the driver and husband of the driver in the alleged 1985 hit and run incident. Id. ¶ 14. Mr. Benckini next alleges that the CPD "concealed, encouraged, condoned, aided, abetted and participated in a criminal attempted homicide" for failing to investigate claims made by Mr. Benckini concerning actions taken in January 2001 by the husband of the driver in the alleged hit and run incident. Id. ¶ 15.

Mr. Benckini further alleges he was falsely arrested by the CPD on June 15, 2001, id. ¶ 16, and then again on October 15, 2001. Id. ¶19. Mr. Benckini also asserts members of the CPD committed perjury by making false statements at Mr. Benckini's July 12, 2002 trial. Id. Mr. Benckini describes what he thought transpired during the trial in detail and asserts that the District Attorney's office sought to protect the Police Department and, to this end, the Police Department and Mr. Weintraub, "encouraged, condoned, aided, abetted the real criminal . . . to revenge the plaintiff [sic] and force him into prison." Id. ¶¶ 20-21. In addition, Mr. Benckini alleges that the Defendants' conduct caused the wrongful death of Mr. Benckini's mother on December 23, 2003. Id. ¶ 32.

Finally, Mr. Benckini alleges that on June 20, 2005 he was stopped by the police only for the purpose of "badgering" him and that on September 1, 2005, upon being arrested his arm was injured when a police officer forcefully pulled him out of the police car. Id. ¶¶ 27-28.

In two prior cases presided over by Judge Berle M. Schiller, Mr. Benckini also filed complaints against some of these same Defendants. He sued Mr. Weintraub in a case that was dismissed with prejudice because the claims were subject to prosecutorial immunity. See Benckini v. Ford, No. 05-1417, 2005 U.S. Dist. LEXIS 11883 (E.D. Pa. June 16, 2005). This prior case brought by Mr. Benckini against Mr. Weintraub also included as a defendant William E. Ford, the judge who presided over the July 12, 2002 trial. The complaint in that case alleged "a conspiracy against the plaintiff to deprive him of a fair and honest trial by jury," "malicious prosecution, false imprisonment, violation of Plaintiff's constitutional rights" and "wrongful death of Plaintiff's mother" in relation to the July 12, 2002 trial that Mr. Benckini has also referenced in his Complaint before this Court. See No. 05-1417 Complaint, attached as exhibit B to Mr. Weintruab's Motion to Dismiss at ¶¶ 1, 10 and the unnumbered paragraph following ¶ 10.

Another complaint against the Coopersburg Borough, the Coopersburg Police Department, Police Chief Daniel Trexler, and the Mayor of Coopersburg was also dismissed by summary judgment as a result of Mr. Benckini's failure to offer any evidence against the Defendants. See Benckini v. Coopersburg Police Dept. No. 03-3671, 2004 U.S. Dist. LEXIS 14663, at *19 (E.D. Pa. July 27, 2004). As Judge Schiller aptly described when dismissing the suit filed by Mr. Benckini against the Coopersburg Borough, the Coopersburg Police Department, Police Chief Daniel Trexler, and the Mayor of Coopersburg, in that action the case involved a "drama between Plaintiff Gene Benckini and Defendants which began on October 20, 1999 and has culminated in [the No. 03-3671 suit before Judge Schiller.]" Benckini v. Coopersburg Police Dept., at *2. Judge Schiller also described that suit as a "civil rights action under 42 U.S.C. § 1983." Id. Many of the incidents alleged as the basis for the claims in that

4

case occurred on the same days and include the same individuals as many of the incidents alleged in Mr. Benckini's instant action. In the instant case Mr. Benckini alleges that during his July 12, 2002 trial, false police reports and perjured testimony concerning allegations of harassment against Mr. Benckni were used against him relating to incidents that occurred on March 9, 2000, September 27, 2001, June 15, 2001, and October 12, 2001. Complaint ¶¶ 20-21. These same incidents were also a basis for the claims that Mr. Benckini made against the Coopersburg Borough, the Coopersburg Police Department, Police Chief Daniel Trexler, and the Coopersburg Mayor in the case dismissed by Judge Schiller.

## II.     DISCUSSION

### A.     The Legal Standard

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The Court must therefore accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985). The Court is not, however, required to accept legal conclusions either alleged or inferred from the pleaded facts. Kost, 1 F.3d at 183. Nonetheless, a court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Understandably, courts must liberally construe complaints drafted by pro se plaintiffs. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 456 (3d Cir. 1996).

### B.     Res Judicata

Both the Coopersburg Defendants and Mr. Weintraub refer to the results in this Plaintiff's earlier cases and argue that most of Mr. Benckini's claims are barred by the doctrine of res judicata.  In their Motion to Dismiss, the Coopersburg Defendants properly argue that res judicata "prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not assert in that action." Williams v. City of Allentown, 25 F. Supp. 2d 599, 602 (E.D. Pa. 1998) (citing Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993)).  In order to successfully invoke res judicata, a party must show that "there has been: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." United States v. Athlone Industries, Inc., 746 F.2d 977, 983 (3d Cir. 1984).  "All facts, allegations, and legal theories which support a particular claim, as well as all possible remedies and defenses, must be presented in one action or are lost." Williams, 25 F. Supp. 2d at 602 (citing 18 James Wm. Moore et al., Moore's Federal Practice § 131.01 (3d ed. 1998)).  "It is well established that a grant of summary judgment is a final adjudication." Williams, 25 F. Supp. 2d at 602; see also Freedman v. American Export Isbrandtsen Lines, Inc., 451 F.2d 157, 158 (3d Cir. 1971) (holding that a dismissal of the first action with prejudice is a complete adjudication of the issues presented by the pleadings and bars further action between the parties).  Comparing the allegations in Mr. Benckini's Complaint with the earlier actions resolved by Judge Schiller makes it clear that all of the requirements for res judicata are met here.

### 1.     The Allegations Against Matthew D. Weintraub

Mr. Benckini appears to allege "constitutional deprivations of Plaintiff's rights," including malicious prosecution and false imprisonment, against Mr. Weintraub.  Complaint ¶ 30.  Mr.

6

Benckini, who attributes the unfortunate death of his mother to his criminal conviction, also asserts that Mr. Weintraub is liable to Mr. Benckini for Mr. Weintraub's role in bringing about the wrongful death of Mr. Benckini's mother. Id. ¶ 32. In this regard, the Complaint contains the same substantive allegations as those which were dismissed with prejudice by Judge Schiller in 2005. Benckini v. Ford, No. 05-1417, 2005 U.S. Dist. LEXIS 11883 (E.D. Pa. June 16, 2005). In that case Mr. Benckini also alleged "malicious prosecution, false imprisonment, violation of Plaintiff's constitutional rights" and "wrongful death of Plaintiff's mother" against Mr. Weintraub in reference to the same events at issue in this case.[4] See Complaint, attached as Exhibit B to Mr. Weintruab's Motion to Dismiss at ¶10 and the unnumbered paragraph following ¶10. Therefore, under the doctrine of res judicata, Mr. Benckini is barred from asserting the same cause of action against the same party in any subsequent suit. Thus, Mr. Benckini's claims under 42 U.S.C. § 1983 and his wrongful death claim against Mr. Weintraub are dismissed.

      **2.**    **The Allegations Against The Coopersburg Borough, Coopersburg Police Officers Daniel Trexler, Herb Hevener, Joseph Hetten, Jason Leindecker, Jeffrey Tapler, William Nahrgang, Matt Hinkel, and The Mayor of Coopersburg**

Mr. Benckini also filed a § 1983 claim against the Coopersburg Borough, the Coopersburg Police Department, Police Chief Daniel Trexler and the Mayor of Coopersburg in

---

[4] In the prior case against Mr. Weintraub, Mr. Benckini also alleged a conspiracy between Judge Ford and Mr. Weintraub "against the plaintiff to deprive him of a fair and honest trial by jury." See Complaint, No. 05-1417, attached as exhibit B to Mr. Weintruab's Motion to Dismiss at ¶ 1. Mr. Weintraub also suggests that Mr. Benckini's current Complaint may allege a similar conspiracy between Mr. Weintraub and the Coopersburg Police. Prosecutorial immunity shields Mr. Weintraub from such a claim. See supra Section C. The Court would also dismiss such an allegation against the named members of the Coopersburg Police Department inasmuch as it would be time barred as having occurred more than two years prior to the filing of the Complaint in this case. See supra Section D.

an action which was resolved by entry of summary judgment by Judge Schiller because Mr. Benckini "failed to present even a scintilla of evidence in support of the essential elements of his constitutional claims." Benckini v. Coopersburg Police Dept., No. 03-3671, 2004 U.S. Dist. LEXIS 14663, at *19 (E.D. Pa. July 27, 2004).  In the present action, Mr. Benckini again files suit against the Coopersburg Borough, Coopersburg Police Chief Daniel Trexler and the Mayor of Coopersburg for "constitutional deprivations."  However, here, Mr. Benckini has also filed suit against specific officers instead of the "Coopersburg Police Department," as he did in the first suit in 2003.[5]  Additionally, Mr. Benckini asserts actions allegedly taken by police officers that he could have, but did not assert in his prior action that was pending before Judge Schiller.

While res judicata prohibits reexamination of matters actually decided in a prior case, as well as those that the parties might have, but did not, assert in a prior action, Williams, 25 F. Supp. 2d at 602, the doctrine also applies when two suits are the same except for the addition in the second suit of defendants closely related to defendants in the prior suit.  See Gambocz v. Yelencsics, 468 F.2d 837, 841 (3d Cir. 1972) ("res judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants").

Allegations of civil rights violations made in Mr. Benckini's complaint against Officer Daniel Trexler for false arrest, malicious prosecution and conspiracy to violate constitutional rights were dismissed by Judge Schiller in the prior case concerning the events that include police conduct on June 15, 2001, September 27, 2001, and October 12, 2001.  Benckini v. Coopersburg Police Dept., No. 03-3671, 2004 U.S. Dist. LEXIS 14663, at *9-16.  These same

---

[5]  Mr. Benckini named additional individuals in the prior suit who were dismissed before the summary judgment decision.  None of those individuals are named in the instant suit.

incidents are also a basis for the claims that Mr. Benckini makes against the Coopersburg Defendants in the instant case.  Complaint ¶¶ 20-21.  Therefore, they cannot be brought again here against the Defendants who were also named in the earlier action.

Additionally, allegations against other named defendants in this case cover the same activity that formed the basis of allegations against closely related defendants in the prior case.  Officer Herb Heverner is mentioned in paragraph 16 of Mr. Benckini's instant Complaint in relation to events of alleged police misconduct on June 15, 2001 which were also asserted in the prior action.  Likewise, Officer Hetten is mentioned in paragraph 18 of the Complaint in reference to the events of alleged police misconduct on October 12, 2001 which were also asserted in the prior action.  Finally, Jeffery Tabler (described by Mr. Benckini as the Lower Milford Police Chief) is identified in paragraph 15 of the Complaint in relation to events of alleged police misconduct that occurred on January 29, 2001 which were asserted in the prior action before Judge Schiller as well.  All three of these officers are closely related to Defendant Officer Trexler and the Coopersburg Police Department which were both parties in the prior case and also allegedly involved in the same conduct forming the basis of claims in both cases.[6]  See Complaint attached as Exhibit B to Coopersburg Defendents' Motion to Dismiss.  Therefore, these allegations are also subject to dismissal under res judicata because they involve successive defendants closely related to defendants in the prior case and amount to the same claims as previously brought by Mr. Benckini.

---

[6]   The Court notes that the Complaint does not make any allegations concerning actions taken by Jason Leindecker or the Mayor of Coopersburg.

9

Finally, all but three of the events[7] in Mr. Benckini's Complaint involve allegations concerning activity that pre-dates the filing of Mr. Benckini's Complaint against Coopersburg Borough, the Coopersburg Police Department, Coopersburg Police Chief Daniel Trexler, and the Mayor of Coopersburg in June of 2003. Therefore, those claims could have been alleged the earlier case. Each one of Mr. Benckini's allegations identified above that involves an incident occurring prior to the filing of his complaint in June 2003 against Coopersburg Borough et al is related to the alleged "long history of hatred" held by the "Coopersburg Borough and their Police Department" against Mr. Benckini. Complaint ¶ 10. Inasmuch as the Coopersburg Borough, the Coopersburg Police Department, Officer Trexler and the Mayor of Coopersburg were named in the prior §1983 suit before Judge Schiller, and the fact that that suit was also based on alleged police misconduct, Mr. Benckini could very well have brought the pre-2003 claims in his prior suit and is now precluded by the doctrine of res judicata from asserting those claims here.

    **C.**    **Absolute Prosecutorial Immunity**

Mr. Weintraub argues that he is immune from the present suit based upon the principle of absolute prosecutorial immunity. The United States Supreme Court has held that a prosecutor enjoys absolute immunity from liability for civil damages for actions related to the prosecution of a criminal case. Imbler v. Pachtman, 424 U.S. 409, 422-24 (1976). Prosecutors are entitled to absolute immunity from suit for all acts "within the scope of [their] duties in initiating and

---

[7] The claims made by Mr. Benckini in paragraphs 27 and 28 of his Complaint relating to actions allegedly taken by Officers Nahrgang and Hinkel, as well as the wrongful death claim asserted apparently against all Coopersburg Defendants, did not take place on or around the dates and times alleged in his first complaint that was dismissed by Judge Schiller. Therefore, those claims are not precluded by the doctrine of res judicata.

pursuing a criminal prosecution." Id. at 410.  Furthermore, absolute immunity shields prosecutors from §1983 civil liability for acts associated with their function as an advocate. Imbler, 424 U.S. at 429.  Even if the prosecutor's malicious or dishonest acts deprive a wronged defendant of liberty, that defendant is without any civil redress against the prosecutor.  Id. at 427.

Because each claim alleged by Mr. Benckini here stems entirely from actions taken by Mr. Weintraub during the course of his duties as a prosecutor, Mr. Weintraub is immune from any liability for the allegations made against him in the instant suit.  Therefore, all of Mr. Benckini's claims against Mr. Weintraub in this case will be dismissed.

### D.      Statute of Limitations

In their Motion to Dismiss, the Coopersburg Defendants argue that aside from being barred by the doctrine of res judicata, the majority of Mr. Benckini's claims are barred by virtue of the applicable statute of limitations.  The statute of limitations can be asserted in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if noncompliance clearly appears on the face of the Complaint.  Clark v. Sears Roebuck Co., 816 F. Supp. 1064, 1067 (E.D. Pa. 1993).  The statute of limitations for Mr. Benckini's claims under 42 U.S.C. § 1983 is Pennsylvania's statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 277 (1985).  Under Pennsylvania law, the statute of limitations for a personal injury action is two years.  See 42 Pa.C.S. § 5524; see also Debiec v. Cabot Corp., 352 F.3d 117, 128 (3d Cir. 2003) (noting that Pennsylvania has a two year statute of limitations for personal injury and wrongful death actions).[8]

---

[8]   The statute of limitations for a slander action is one year.  42 Pa.C.S. § 5523(1).  Mr. Benckini also alleges slander in paragraph 30 of his Complaint.  However, even when interpreted generously, the Court does not find any allegations in the Complaint that could form the basis of

Even though Pennsylvania law controls the applicable statute of limitations, federal law determines when a cause of action accrues for a §1983 claim. Elliott, Reihner, Siedzikowski and Egan, P.C. v. The Pennsylvania Employees Benefit Trust Fund, 161 F. Supp. 2d 413, 420 (E.D. Pa. 2001). A § 1983 claim accrues on the date the plaintiff knew or had reason to know of the injury which is the basis for his action. De Botton v. Marple Township, 689 F. Supp. 477, 480 (E.D. Pa. 1988). More generally, a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that the injury constitutes a legal wrong. See Oschiver v. Levin Fishbine, Sedran and Berman, 38 F.3d 1380, 1386 (3d Cir. 1994).

The Complaint in this matter was filed on September 27, 2005, but Mr. Benckini alleges "aiding and abetting a criminal cover-up" occurring in 1985 and 2001, false arrests in 1994 and 2001, and incidents of additional police misconduct in 1997, 2001 and 2002 - all well beyond the two-year limitations period.

Mr. Benckini also alleges that "Coopersburg Borough failed to properly train and instruct the police officers concerning procedures in arrest and investigations of hit and run, attempted homicide and hit and run homicide accidents with honesty and integrity. . . ."[9] Complaint ¶ 35. In his response to the Defendants' Motions Mr. Benckini also adds in a disjointed allegation that

---

a slander claim that would survive the statute of limitations.

[9]   Section 1983 liability may exist if a constitutional injury resulted from the execution of the municipality's policy or custom. Monell v. Department of Social Services of the City of New York,, 436 U.S. 658, 694 (1978). "The official policy or adopted custom that subjects a municipality to § 1983 liability may relate to the training of police officers." Brown v. Muhlenberg, 269 F.3d 205, 215 (3d Cir. 2001). To establish municipal liability under a "failure to train" theory, a plaintiff "must present evidence that the need for more or different training was so obvious and so likely to lead to violations of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." Id. at 216. Defendants here have not attacked the Complaint for failure to meet Monell requirements.

"the Borough never presented to the officers a training course with the duties and responsibilities of their actions which lead [sic] to the criminal act and coverup of the homicide by vehicle on September 3, 1999." See Response to Coopersburg Defendants' Motion (Docket No. 7) under the heading "Count Two."[10]

      The alleged facts upon which Mr. Benckini bases these claims in support of his allegation for "failure to train" do not come close to being timely under the two year statute of limitations. While this "failure to train" claim would not be cognizable if interpreted as negligent investigative efforts on behalf of the police,[11] the most recent of the events on which Plaintiff bases his "failure to train" claim happened over four years prior to the filing of this Complaint, namely, the alleged January 29, 2001 "attempted homicide" which the Coopersburg Police supposedly failed to investigate properly.  The alleged cover-up resulting from the "failure to train" could also be interpreted to have included the allegations concerning the perjured testimony and false police reports that Mr. Benckini has described as playing a part in his July 2002 trial - more than two years prior to the filing of the current Complaint.  Even viewing the Complaint generously, the Court can not construe the "failure to train" claim as involving any actions taken within two years of the filing of his Complaint.   Therefore, all but the claims in paragraph 27 and 28 as well as the wrongful death claim are time barred.[12]

---

[10]   This allegation effectively amends the Complaint, but in light of Mr. Benckini's pro se status the Court will consider it as if originally pleaded.

[11]   "[N]egligence by public officials is not actionable as a due process deprivation of a civil right." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000).

[12]   Mr. Benckini does assert in his response that his claims should survive the statute of limitations because he did not discover the real reason for the Defendants' actions until he learned in August of 2004 that the real perpetrator of yet another hit and run accident in September of 1999 (which Mr. Benckini happened to witness) was a "very close friend" of Officer Trexler, and that all the Defendants' actions were toward the end of covering up for the

**E.    Section 1983 Allegations that Survive Statute of Limitations and Res Judicata**

After application of res judicata, the statute of limitations, and prosecutorial immunity, certain §1983 claims remain, namely, a claim that a traffic stop was conducted in violation of Mr. Benckini's constitutional rights, claims of false arrest and false imprisonment, a claim of malicious prosecution and a claim of the use of excessive force by a police officer. "A prima facie case under §1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Inasmuch as Mr. Benckini has made allegations against parties who could reasonably be understood to be acting under the color of state law, here, the issue is whether the Defendants' alleged conduct violated Mr. Benckini's constitutional rights.

**1.    Traffic Stop and Alleged False Arrest/Imprisonment In 2005**

The Coopersburg Defendants concede that Mr. Benckini makes allegations in paragraphs 27 and 28 of his Complaint that are not barred by res judicata or the applicable statute of limitations. However, the Coopersburg Defendants argue that these claims should nonetheless, be dismissed because they are not cognizable.

---

real driver in the 1999 hit and run accident. This explanation, however, does not account for the fact that Mr. Benckini's Complaint can only be reasonably interpreted as demonstrating that prior to this supposed discovery of the Defendants' alleged motivations, Mr. Benckini was aware of any injury caused by the actions he alleges were taken against him. His claims against the Defendants include allegations such as his supposed conviction based on perjured testimony and various false arrests. Mr. Benckini would have been aware at his trial that the testimony amounted to perjury because the testimony related to events Mr. Benckini was directly involved in, and with respect to his arrests, he certainly knew at the time they took place whether or not they were based on any wrongdoing by Mr. Benckini. The injuries from these actions would obviously have been known to Mr. Benckini, regardless of whether or not Mr. Benckini "knew" it was all part of an attempt to cover-up the "truth."

With respect to the June 20, 2005 incident alleged in Mr. Benckini's Complaint, Mr. Benckini refers to fines assessed by the police as a result of traffic citations. He states that "Coopersburg officer [William C. Nahrgang] was just badgering the plaintiff because he didn't have cause to stop the plaintiff." Complaint ¶ 27. "The temporary detention of individuals during an automobile stop by the police, even if only for a brief period, constitutes a seizure within the meaning of the Fourth Amendment. Therefore, an automobile stop is subject to the Constitutional requirement that the seizure not be 'unreasonable' under the circumstances." Litzenberger v. Vanim, No. 01-5454, 2002 U.S. Dist. LEXIS 13843 (E.D. Pa. July 31, 2002) (citing Whren v. U.S., 517 U.S. 806, 809-10 (1996)).

The Coopersburg Defendants respond by arguing that for the June 20, 2005 incident alleged in the Complaint, Plaintiff was properly issued a summary traffic citation stemming from his failure to secure a load he was hauling on a trailer behind his vehicle in violation of 75 Pa.C.S. § 4903 for which he was later found guilty by a district justice.[13] The Coopersburg Defendants argue that when an individual has been convicted of the crime for which he was arrested and subsequently attempts to bring a §1983 claim concerning the arrest or conviction, that individual "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Mosley v. Yaletsko, 275 F. Supp. 2d 608, 615 (E.D. Pa. 2003) (citing Heck v. Humphrey, 512 U.S. 477, 486–87 (1994)). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983." Id. However, in Mr.

---

[13] The Defendants also admit that a separate charge was dismissed.

Benckini's response to the Coopersburg Defendants' Motion he alleges that the Lehigh County Court of Common Pleas found him not guilty on February 21, 2006, after the filing of the Coopersburg Defendants' motion.[14]  Here, Mr. Benckini alleges that there was no cause for the vehicle stop other than harassment.  Therefore, when the allegations are taken as true, Mr. Benckini has stated a claim for a violation of his constitutional rights, and the Court must deny the Coopersburg Defendants' Motion concerning the traffic stop.

Furthermore, paragraph 28 of Mr. Benckini's Complaint can be interpreted to include allegations that he was also falsely arrested and/or imprisoned on September 1, 2005 by Coopersburg police officer Matt Hinkel.  In response, the Coopersburg Defendants argue that Mr. Benckini was arrested on that date pursuant to a facially valid warrant issued by a judge.  In their Motion to Dismiss, the Coopersburg Defendants note that the torts of false arrest and false imprisonment are essentially the same actions.  Olender v. Township of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999).  The Fourth Amendment prohibits a police officer from arresting a person without probable cause.  Paff v. Kaletenbach, 204 F.3d 425, 435 (3d Cir. 2000).  To assert a §1983 false arrest claim, a plaintiff must demonstrate that the arresting officer lacked probable cause to make the arrest.  Garcia v. County of Bucks, Pennsylvania, 155 F. Supp. 2d. 259, 265 (E.D. Pa. 2001).  "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer['s] [belief] that the party has committed an offense."  Id. (citing Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997)); see also Dowling v. City of Philadelphia, 855 F.2d 136,141 (3d Cir. 1998) (holding that it is well established that when an officer makes an arrest pursuant to a facially valid warrant, the officer is deemed to

---

[14]  Again, this allegation effectively amends the Complaint, but again in light of Mr. Benckini's pro se status the Court will consider it.

have acted with probable cause). Conversely, a §1983 claim for false imprisonment will fail if the arrest was based on probable cause. Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 852-53 (E.D. Pa. 2000).

However, at the motion to dismiss stage where the allegations must be taken as true and reasonable inferences made in Mr. Benckini's favor, the Court is not permitted to credit the Coopersburg assertion in the Motion that the arrest was based on a valid warrant. Therefore, the Defendants' Motion to Dismiss the false arrest claim in paragraph 28 of Mr. Benckini's Complaint is denied.[15]

### 2. Malicious Prosecution

The Coopersburg Defendants argue that Mr. Benckini's claims against them for malicious prosecution, in paragraph 27 of his Complaint, must be dismissed for the failure to state a claim upon which relief may be granted because he was in fact found guilty of violating 75 Pa.C.S. § 4903.[16] As explained above, Mr. Benckini has subsequently alleged that the Lehigh

---

[15] The Coopersburg Defendants also argue that they are entitled to qualified immunity because the arresting officer relied on a valid warrant and therefore reasonably believed there was probable cause for the arrest. To determine whether qualified immunity applies, the Court must first decide whether "the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). Given the early stage of this litigation, the facts remain in dispute and therefore it would be premature to conclude whether or not the doctrine of qualified immunity will apply in this case.

[16] The Court notes that to the degree that the Coopersburg Defendants rely on Lee v. Mihalich, 847 F.2d 66, 69-70 (3d Cir. 1988), for the elements of a claim for malicious prosecution under § 1983, the Supreme Court case Albright v. Oliver, 510 U.S. 266 (1994), "significantly changed that legal landscape." Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002). Subsequent interpretations of Albright have required the showing that the "plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding" in addition to the elements of malicious prosecution listed in Lee. See, e.g., DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).

County Court of Common Pleas found him not guilty of the offense. Therefore, the Court must deny the Coopersburg Defendants' motion as to this claim.[17]

### 3. Excessive Force

In footnote 4 of their Motion to Dismiss, Coopersburg Defendants argue that "Plaintiff does not make an excessive force claim in Counts I, II, or III." However, Mr. Benckini claims that when he was arrested on September 1, 2005, Officer Hinkel made Mr. Benckini's handcuffs "real tight on the Plaintiff's wrists," and, upon reaching Lehigh County Prison, "the Officer reached in and grabbed the plaintiff pullin[g] him out forcefully cutting his left arm on the door jam . . . ." (Complaint ¶ 28).

The use of excessive force can be an unlawful "seizure" under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Despite the Coopersburg Defendants' contention that Mr. Benckini does not make an excessive force claim in paragraph 28 of his Complaint, when afforded a generous interpretation,

---

[17] The rule that even an overturned municipal conviction presumptively establishes probable cause does not apply to a § 1983 malicious prosecution action. "Applying a presumption of probable cause in a section 1983 action on the sole basis of a municipal conviction that has subsequently been overturned undermines one of the Civil Rights Act's raisons d'etre, i.e., to interpose the federal courts, as guardians of federal rights, between the authority of the states and the people." Montgomery v. De Simone, 159 F.3d 120, 125 (3d Cir. 1998).

Mr. Benckini's Complaint can be read to set forth a claim for excessive force in paragraph 28. Therefore, Mr. Benckini will be permitted to go forward with his claim for excessive force.

### F. Mr. Benckini's Motion to Amend His Complaint

On December 20, 2005, Mr. Benckini filed a motion seeking leave to amend his Complaint as to alleged actions taken by Defendant Matthew D. Weintraub. The proposed amendment appears to concern alleged events associated with Mr. Weintraub's conduct surrounding the prosecution of Mr. Benckini in February and March of 2002. The Federal Rules of Civil Procedure dictate that if a responsive pleading has been served in a case, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

In his Motion to Amend the Complaint, Mr. Benckini has offered no explanation to the Court for why leave should be given allowing him to amend his complaint. Mr. Weintraub enjoys the benefits of prosecutorial immunity as discussed above, making Mr. Benckini's proposed amendments futile as proposed. Therefore, Mr. Benckini's Motion to Amend his Complaint is denied.

## III. CONCLUSION

For the reasons discussed above, the Court grants Mr. Weintraub's Motion to Dismiss in its entirety, grants in part and denies in part the Coopersburg Defendants' Motion to Dismiss, and denies Mr. Benckini's Motion to Amend his Complaint. An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE C. BENCKINI | : | CIVIL ACTION |
| t/a | : | |
| BENCKINI NURSERIES, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| COOPERSBURG BOROUGH et al., | : | |
| Defendants | : | NO. 05-5122 |

## ORDER

Gene E.K. Pratter, J.                                                                                          August 18, 2006

**AND NOW,** this 18th day of August, 2006, upon consideration of the Defendants' Motions to Dismiss (Docket Nos. 3 and 4), and the responses thereto (Docket Nos. 6 and 7), as well as Plaintiff's Motion to Amend (Docket No. 5), **IT IS HEREBY ORDERED** that:

1. Defendant Matthew D. Weintraub's Motion to Dismiss (Docket No. 3) is granted, and all claims against Mr. Weintraub shall be dismissed with prejudice;

2. The Coopersburg Defendants' Motion (Docket No. 4) is granted in part and denied in part. The Motion is denied as to the alleged violations of 42 U.S.C. § 1983 in paragraphs 27 and 28 as well as the wrongful death claim under state law alleged in paragraph 32. The claims asserted in the remaining paragraphs of the Complaint against the Coopersburg Defendants shall be dismissed with prejudice. The Coopersburg Defendants' shall file their answer to the remaining claims within twenty (20) days of the date of this Order.

3. Mr. Benckini's Motion to Amend (Docket No. 5) is denied.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE