IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE C. BENCKINI | : | CIVIL ACTION |
| t/a | : | |
| BENCKINI NURSERIES, | : | |
|     Plaintiff | : | |
| | : | |
|     v. | : | |
| | : | |
| COOPERSBURG BOROUGH et al., | : | |
|     Defendants | : | NO. 05-5122 |

**MEMORANDUM AND ORDER**

*Gene E. K. Pratter, J.*                                                                          May 19, 2008

    <u>Pro se</u> Plaintiff Gene C. Benckini has sued Coopersburg Borough, Coopersburg Police Officers Daniel Trexler, Herb Hevener, Joseph Hetten, Jason Leindecker, Jeffrey Tapler, William Narhgang, Matt Hinkel, and the Mayor of Coopersburg[1] (hereinafter "Coopersburg Defendants"). Viewing the Complaint indulgently, Mr. Benckini alleges various civil rights violations pursuant to 42 U.S.C. § 1983 and a wrongful death claim arising under state law. Mr. Benckini's Motion for Summary Judgment[2] and the Coopersburg Defendants' Motion for Summary Judgment

---

[1] In his Complaint, Mr. Benckini does not identify the Mayor of Coopersburg by name.

[2] The Court repeatedly extended filing deadlines in order to afford Mr. Benckini the flexibility and the opportunities often provided to <u>pro se</u> litigants. However, the Court denied a final Motion to Continue the Deadline for Dispositive Motions (Docket No. 39) and instead, ordered that all dispositive motions be filed by October 1, 2007. Mr. Benckini ignored this firm deadline and filed his Motion for Summary Judgment on October 9, 2007. Although Rule 6 requires that litigants respect the scheduling of their cases or suffer the consequences (in this case, arguably denial of the motion as being out of time), the Court will consider Mr. Benckini's Motion on its merits. The Court also again will overlook Mr. Benckini's complete failure to

presently await the Court's resolution.  For the reasons set forth below, the Court will deny the Benckini Motion for Summary Judgment and grant the Coopersburg Defendants' Motion for Summary Judgment.

I.     FACTUAL BACKGROUND

Mr. Benckini commenced this action in September 2005 when he filed suit against the Coopersburg Defendants and Chief Deputy District Attorney Matthew D. Weintraub, who had prosecuted Mr. Benckini in an earlier criminal matter.  The Court dismissed all claims against Mr. Weintraub and many of the claims against the Cooperburg Defendants in August 2006.  See, Benckini v. Coopersburg Borough, 2006 U.S. Dist. LEXIS 60885 (E.D. Pa. August 18, 2006).  That memorandum recites an extensive factual background of this case.  Id. at *3-8.  A brief summary of the remaining array of claims follows to facilitate an understanding of those claims.

Mr. Benckini alleges that on June 20, 2005, Officer Narhgang stopped Mr. Benckini's truck for the sole purpose of "badgering" him and falsely asserted that Mr. Benckini's loader was not properly secured on his trailer.  Compl. ¶ 27.  Mr. Benckini further asserts that on September 1, 2005, while being transported to the Lehigh County Prison he was forced to sit on his handcuffed wrists, causing him pain.  Mr. Benckini alleges that at the prison, Officer Hinkel forcefully pulled him out of the police cruiser cutting his arm on the door jam.  Id. ¶ 28.  In addition, Mr. Benckini alleges that the Coopersburg Defendants' alleged misconduct caused the wrongful death of his mother on December 23, 2003.  Id. ¶ 32.

---

follow court procedures as outlined in Rule 56 and Local Rule 7.1, Rules Mr. Benckini was obligated to follow notwithstanding his pro se status.

## II.     DISCUSSION

### A.     The Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the trial court of the basis for the motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented via the motion in the light most favorable to the

opposing party.  Anderson, 477 U.S. at 255.  The non-moving party's pro se status does not change the substantive law in these regards.

### B. The Violation of Constitutional Rights and Qualified Immunity

Officers Nahrgang and Hinkel assert that 1) they did not violate Mr. Benckini's constitutional rights on June 20, 2005 or September 1, 2005, and 2) even if they violated his constitutional rights, they are entitled to qualified immunity for their actions.  Claims made under § 1983 for damages against government officials like police officers almost always raise issues concerning the availability of qualified immunity.  Under the defense of qualified immunity, "[g]overnment officials performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Sharrar v. Felsin, 128 F.3d 810, 826 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The Supreme Court has established a two-step test for determining whether an officer's actions may be shielded from liability under the doctrine of qualified immunity.  First, the Court must consider whether an officer's actions violated a constitutional right.  If the officer's conduct did not violate a constitutional right, the analysis ends here.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  However, if an officer's conduct did violate a constitutional right, the Court must proceed to the second part of the test.  The Court must determine whether the constitution right at issue was clearly established in light of the specific factual circumstances of the particular case. Id. at 201-202.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted." Id. at 202. The second step of the test requires consideration of whether the officer can establish that he "mistakenly but reasonably believed that his actions were constitutionally permissible." Hung v. Watford, 2002 U.S. Dist. LEXIS 23064, at *2 (E.D. Pa. Dec. 3, 2002). Accordingly, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

### C. Unlawful Seizure: June 20, 2005

Mr. Benckini alleges that Coopersburg Police Officer William Nahrgang unlawfully seized his person through a traffic stop lacking probable cause on June 20, 2005. Mr. Benckini asserts that the officer stopped and ticketed him to harass him rather than for any legal reason. Compl. ¶ 27. Officer Nahrgang avers that he had probable cause to issue Plaintiff citations for operating a vehicle with an unsecured load in violation of 75 Pa. C.S.A. §4903 ("securing loads in vehicles"). See, Commonwealth v. Casterlin, 336 Pa. Super. 170, 173 (1984) (explaining that §4903 "mandates that loads be fastened so as to prevent their coming loose resulting in a hazard to other users of the highway").

An automobile stop is a Fourth Amendment "seizure" although "the purpose of the stop is limited and the resulting detention quite brief," so any stop must be reasonable under the circumstances to pass constitutional muster. Delaware v. Prouse, 440 U.S. 648, 653 (1979). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. U.S., 617 U.S. 806, 810 (1996). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's

knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480 , 483 (3d Cir. 1995).

With respect to the initial inquiry under qualified immunity, Mr. Benckini has presented sufficient evidence to, at a minimum, raise a genuine issue as to whether a constitutional violation occurred. Officer Nahrgang asserts that he observed Mr. Benckini transporting an unsecured skid loader, but Mr. Benckini claims that his loader was properly fastened to his trailer. Accordingly, the Court will look to the second part of the test for qualified immunity: whether the constitution right to be free from unlawful seizures was clearly established in light of the specific factual circumstances of the present case.

Since qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004), a determination that probable cause was lacking does not require a finding that the arresting officer is liable for damages, Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 1999). As the Supreme Court explained, "it is inevitable that law enforcement officials will mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987).[3]

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."

---

[3] The issue of qualified immunity must be resolved at the earliest possible time because the privilege will be effectively lost if the case is erroneously permitted to go to trial. Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001).

Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "A court presented with a claim of qualified immunity must examine both the law that was clearly established at the time of the alleged violation and the facts available to the officer at that time, and must then determine, in light of both, whether a reasonable official could have believed his conduct was unlawful."  Paff, 204 F.3d at 431.  The officer's subjective intent is irrelevant.  Showers v. Spangler, 182 F.2d 165, 171 (3d Cir. 2000).

Assuming, *arguendo*, the existence of a constitutional violation, the Court must determine whether the constitutional right in question was "clearly established" such that a reasonable law enforcement officer could have believed that his conduct was lawful under the circumstances.  Blackhawk, 381 F.3d at 215; see also, Brosseau, 543 U.S. at 199 ("The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable police officer that his conduct was unlawful in the situation he confronted.").

In this case, there is no question that the right at issue, namely, the right to be free from seizure through traffic stops except when made with probable cause, was clearly established at the time Officer Nahrgang stopped Mr. Benckini's truck.  See, Prouse, 440 U.S. at 653.  However, after determining that a right was clearly established at the time in question, the Court must consider whether Officer Nahrgang reasonably, albeit mistakenly, concluded that he had probable cause to make the traffic stop.  Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Officer Nahrgang asserts that he conducted the traffic stop after "observ[ing] Gene C. Benckini transporting an unsecured skid steer loader on the trailer attached to his Ford truck."

7

(MSJ-D, Ex. B ¶ 3 (Nahrgang Aff.)).  After stopping the truck, Officer Nahrgang conducted an investigation and "confirmed [his belief] that the loader was unsecured and posed a hazard."  Id. ¶ 5.  As a result, he issued Mr. Benckini related traffic citations.  Id. ¶ 6.  Officer Nahrgang stated in his affidavit, "Based upon my years of experience, there was reasonable suspicion to stop Mr. Benckini and probable cause to issue these citation."  Id.  Accordingly, Officer Nahrgang based his traffic stop on first-hand observations and his experience as a police officer.  Mr. Benckini asserts that Officer Nahrgang acted, at least in part, in order to harass Mr. Benckini, but the officer's subjective intent is irrelevant.  Showers, 182 F.2d at 171

In addition, on August 9, 2005, a state court magistrate judge found Mr. Benckini guilty of improper fastening of a load.  (MSJ-D, Ex. B, ¶ 7.)  Such a finding provides additional evidence of the objective reasonableness of Officer Nahrgang's decision to conduct the traffic stop.  Mr. Benckini appealed the conviction, and the District Attorney's Office of Lehigh County again prosecuted the citation.  Mr. Benckini eventually was found not guilty.  Id.  However, this result, of course, does not dictate the result of Mr. Benckini's civil claim here in terms of probable cause itself or, relatedly, in terms of the reasonableness of Officer Nahrgang's beliefs on the issue.  "Neither an acquittal of the defendant in a criminal prosecution, nor the ignoring of the bill against him by the grand jury, nor his discharge by the examining magistrate, constitute proof of want of probable cause, or shifts the burden of proof to the defendant in the civil action."  O'Rourke v. Krapf, 2002 U.S. Dist. LEXIS 18358, at *28 (E.D. Pa. 2002) (quoting Simpson v. Montgomery Ward & Co., 46 A.2d 674, 676 (Pa. 1946)).

Mr. Benckini presents no evidence that at the time of the vehicle stop Officer Nahrgang did not reasonably believe that he had probable cause to stop Mr. Benckini's truck and issue the

citations. Rather, Mr. Benckini repeatedly asserts without evidence that his equipment was properly secured and that Officer Nahrgang stopped him only "to badager [sic] and falsely charge" him. Plaintiff's Reply to Defendants' Response to Motion for Summary Judgment ¶ 3. Even viewed in the light most favorable to Mr. Benckini, the evidence merely supports a finding that Officer Nahrgang was mistaken about the security of Mr. Benckini's loader, not that he was unreasonable in his assessment of the situation.

In contrast, Officer Nahrgang has presented evidence that based on his years of experience as a police officer and what he observed the day in question, he believed that Mr. Benckini's loader was not legally secured onto his trailer as well as evidence that at least one Commonwealth court believed the same. In other words, even if Officer Nahrgang did not have probable cause to conduct a traffic stop, it was objectively reasonable for him in the actual situation to believe based on his observations and his experience as a police officer that the loader was not properly secured. Accordingly, the Court finds that even if the June 20, 2005 traffic stop violated Mr. Benckini's constitutional rights, Officer Nahrgang is entitled to qualified immunity from suit because his conclusion that he had probable cause to stop Mr. Benckini's truck was reasonable under the particular circumstances. The Court finds that Officer Nahrgang is protected by the doctrine of qualified immunity with respect to Mr. Benckini's Fourth Amendment claim and may not be held personally liable.

**D. Malicious Prosecution**

Mr. Benckini does not limit his allegations arising from the June 20, 2005 traffic stop to unlawful seizure of his person. When viewed generously, his Complaint also asserts in his

Complaint that a malicious prosecution followed the traffic stop for his allegedly unsecured loader. Although Mr. Benckini's traffic citation necessitated two court appearances prior to his ultimately being found not guilty, the record establishes that Mr. Benckini did not suffer a constitutional deprivation sufficient to maintain a malicious prosecution claim. To prevail on such a claim,

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

The issuance of a traffic citation and the resulting court appearances simply do not result in deprivation of liberty sufficient to support a malicious prosecution claim. The court in Dibella v. Borough of Blackwood, 407 F.3d 599 (3d Cir. 2005) explained that "the type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." Id. at 603. See also, Laufgas v. Patterson, 206. Fed. Appx. 196, 198 (3d Cir. 2006) (finding that prosecution without "onerous types of pretrial non-custodial restrictions" did not constitute a Fourth Amendment seizure). In Dibella, the court held that the plaintiffs failed to establish a Fourth Amendment seizure as a result of a legal proceeding because "they were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial services." Id. The plaintiffs' required attendance at their trial was not enough to support their malicious prosecution claim. "Attending one's trial is not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action." Id. Compare, Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d. Cir. 1998) (finding

a seizure where the plaintiff was required to post a significant bond, attend multiple court hearings and his arraignment, contact Pretrial Services on a weekly basis, and remain within the borders of Pennsylvania and New Jersey).

Here, Mr. Benckini suffered only one alleged deprivation of liberty as a result of his traffic citations: the requirement that he appear in court to challenge his traffic citations. As such, he was not seized through malicious prosecution, and his claim for malicious prosecution must fail.

**E. False Arrest: September 1, 2005**

Paragraph 28 of Mr. Benckini's Complaint arguably can be interpreted to include allegations that he was falsely arrested and/or imprisoned on September 1, 2005 by Officer Hinkel. The Pennsylvania torts of false arrest and false imprisonment are essentially the same actions. Olender v. Township of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999).

The Fourth Amendment prohibits a police officer from arresting a person without probable cause. Paff v. Kaletenbach, 204 F.3d 425, 435 (3d Cir. 2000). To assert a §1983 false arrest claim, a plaintiff must demonstrate that the arresting officer lacked probable cause to make the arrest. Garcia v. County of Bucks, Pennsylvania, 155 F. Supp. 2d. 259, 265 (E.D. Pa. 2001). "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer['s belief] that the party has committed an offense." Id. (citing Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997)); see also Dowling v. City of Philadelphia, 855 F.2d 136,141 (3d Cir. 1998) (holding that it is well established that when an officer makes an

arrest pursuant to a facially valid warrant, the officer is deemed to have acted with probable cause).  As such, a §1983 claim for false imprisonment will fail if the arrest was based on probable cause.  Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 852-53 (E.D. Pa. 2000).

The Coopersburg Defendants assert that Mr. Benckini was arrested on September 1, 2005 pursuant to a facially valid warrant issued by a judge.  (MSJ-D, Ex. C ¶ 2.)  The existence of probable cause here turns on the validity of that underlying warrant.  See, Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997).  Because Mr. Benckini neither alleges that the warrant was somehow invalid nor offers any evidence that would undermine the warrant's validity, Plaintiff has no basis for a § 1983 false arrest claim even if his conviction now was to be overturned.

The Coopersburg Defendants further argue that the record establishes that on December 15, 2006, Mr. Benckini was convicted of the charges stemming from his September 1, 2005 arrest.  (MSJ-D, Ex. D at 1, 4.)  When an individual has been convicted of the crime for which he was arrested and subsequently attempts to bring a § 1983 claim concerning the arrest or conviction, he "must prove that the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a Federal Court's issuance of a Writ of Habeas Corpus." Mosely v. Yaletsko, 275 F. Supp. 2d 608, 615 (E.D. Pa. 2003) (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1984)).  "A claim for damages bearing that relationship to a conviction or sentence that has not been invalidated is not cognizable under § 1983." Id.  Taking the evidence in the light most favorable to Mr. Benckini, the Court finds that no constitutional violation occurred. Because Mr. Benckini's conviction for forgery and impersonating a public servant has not been overturned or otherwise successfully challenged, he cannot maintain a claim for false

arrest stemming from his September 1, 2005 arrest.

_____

**F. Excessive Force: September 1, 2005**

Mr. Benckini claims that when he was arrested on September 1, 2005, Officer Hinkel made Mr. Benckini's handcuffs "real tight on the Plaintiff's wrists," and, upon reaching Lehigh County Prison, "the Officer reached in and grabbed the plaintiff pullin[g] him out forcefully cutting his left arm on the door jam . . . ." Compl. ¶ 28. The use of excessive force can be an unlawful "seizure" under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).

A plaintiff alleging an excessive force claim must demonstrate that the arresting officer's seizure of the plaintiff was unreasonable. Bronstad v. Honeybrook Twp., 211 Fed. App'x 118, 123 (3d Cir. 2007). The right to use a certain degree of physical coercion or threat may accompany the right to make an arrest. "'[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." Graham, 490 U.S. at 394 (quoting Johnson v. Glock, 481 F.2d 1028, 1033 (2d Cir. 1973)). In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

**1. Handcuffs**

Mr. Benckini has presented in his Complaint no allegation that he ever complained that his handcuffs were excessively tight. Mere tight handcuffing without more is not sufficient to support a claim of excessive force in an arrest situation. Karkut v. Target Corp., 453 F. Supp. 2d 874, 887 (E.D. Pa. 2006). However, in his Motion for Summary Judgment, Mr. Benckini alleges that he plead with Officer Hinkel "to loose the hand cuffs [sic] because they were cutting into [his] wrists and cutting off blood flow," but the officer simply ignored him. Id. at ¶ 4.D. Officer Hinkel denies that Mr. Benckini ever complained about his handcuffs. (MSJ-D, Ex. C ¶ 5.)

In Kopec V. Tate, 361 F.3d 772 (3d Cir. 2004), the Third Circuit Court of Appeals reversed a grant of summary judgment in an excessive force case involving tight handcuffs. In Kopec, the plaintiff asserted that he was in intense pain that would have been obvious to any officer. He said he complained of the pain and actually fainted due to its intensity. In addition, the plaintiff alleged nerve damage in his wrist which required treatment from a hand-surgeon for more than a year. Id. at 774. While the court rejected the grant of summary judgment for the defendant, it cautioned that the "opinion should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims." Id. at 777.

In the Court's considered view, Mr. Benckini's case more closely follows Giles v. Davis, 427 F.3d 197 (3d Cir. 2005). In Giles, the court found that a plaintiff who merely complained of pain without more and who never sought independent medical care for alleged injuries from his handcuffs could not survive summary judgment. Id. at 207-08. Alleged discomfort simply is not enough. Accordingly, even if Mr. Benckini did complain about discomfort from the handcuffs, without more (of which Mr. Benckini articulates nothing), this claim of excessive force cannot survive on this theory of liability.

**2. Forceful Removal from the Police Cruiser**

Mr. Benckini supports his claim of excessive force with a second allegation, however. He asserts that Officer Hinkel forcefully pulled him from the police cruiser, cutting his arm on the door jam. Complaint ¶ 28. However, Mr. Benckini notes in his Reply Brief that he "couldn't move his legs in order to get out at the prison," id. ¶ 3, so Mr. Benckini seems to admit that Officer Hinkel's assistance was necessary. While Plaintiff asserts that Officer Hinkel "angerly" [sic] pulled him from the car, Reply Brief ¶ 3, the officer's mood is not at issue. The facts taken in the light most favorable to Mr. Benckini cannot support any allegation that Officer Hinkel purposefully caused Mr. Benckini's arm to contact the door jam. There is no evidence that any harm – namely, Mr. Benckini's arm striking the door jam – was done intentionally. See, Thomas v. City of Erie, 236 Fed. Appx. 772, 776 (3d Cir. 2007) (upholding summary judgment for the defendants where there was no proof police officers intentionally struck plaintiff's head on a van while placing him into the vehicle).

While Mr. Benckini asserts that he told the intake nurse at the prison that he was injured, see, Compl. ¶ 28, Officer Hinkel asserts that Mr. Benckini did not tell him, the judge at his arraignment, or any prison employee that he was injured. (MSJ-D, Ex. C ¶¶ 5-7.) To be sure, prison intake records indicate that Mr. Benckini was not injured or bleeding when he entered the facility and contain no evidence that Mr. Benckini ever mentioned any injury at the time it was allegedly inflicted upon him. (MSJ-D, Ex. C.) Officer Hinkel noted that the prison will not accept individuals who are injured, and that the prison readily accepted Mr. Benckini. Id. at ¶ 7.

Mr. Benckini's situations parallels that in Thomas v. City of Erie, 236 Fed. Appx. 772. There the Third Circuit Court of Appeals affirmed the granting of summary judgment to police

officers who forced the plaintiff onto the ground during his arrest, pulled his arms behind him, and struck his head against a police van while loading him into the vehicle.  The court found the officers actions during the arrest itself reasonable due to the plaintiff's uncooperative response to their instructions.  When considering the striking of the plaintiff's head, the court focused on the fact that there was no evidence that the officers purposefully struck the plaintiff against the van and no evidence of any resulting injury.  Although the plaintiff eventually saw a doctor for his alleged injuries, "[t]he only doctor to ever see [the plaintiff] simply told him to go home and 'take it easy.'"  Id. at 776.  Like the plaintiff in Thomas, Mr. Benckini presents no evidence of intentional maliciousness on the part of Officer Hinkel, so even if what Mr. Benckini claims about his interactions with Officer Hinkel is true, there is insufficient evidence to prove that Officer Hinkel used excessive force in removing him from the police cruiser.  See also, Giles, 427 F.3d at 207-08 (granting summary on excessive force claim where there were no obvious indicators of the plaintiff's pain and where the plaintiff never sought or received medical care for alleged injuries).

Taking the facts in the light most favorable to Mr. Benckini, the Court finds no constitutional violations occurred while Officer Hinkel was transporting Mr. Benckini to the prison.

**G. Wrongful Death**

Mr. Benckini alleges that the Coopersburg Defendants' actions forced his elderly mother from Mr. Benckini's home and into a "retirement home," where she subsequently "died of a broken heart."  Complaint ¶ 32.  In one of the prior suits that Mr. Benckini brought before Judge

16

Berle Schiller, <u>Benckini v. Ford</u>, 05-1417, 2005 U.D. Dist. LEXIS 11883 (E.D. Pa. June 16, 2005), the Court dismissed Mr. Benckini's wrongful death claim for failure to state a claim.  <u>Id.</u> at *13.  Judge Schiller noted that Mr. Benckini's "claim that his mother died of a broken heart as a result of Defendants' actions is simply not cognizable under Pennsylvania's wrongful death statute."  <u>Id.</u> (citing 42 Pa. C.S. § 8301(a) (1988) (permitting wrongful death action to recover damages for death of an individual caused by wrongful act or neglect or unlawful negligence or violence)).

As in <u>Benckini v. Ford</u>, the Complaint and the resulting discovery in the present action "contain[] no allegations that even remotely tie the actions of" the Coopersburg Defendants "to the unfortunate death of [Mr.] Benckini's mother."  <u>Id.</u>  Accordingly, even when viewed in the most generous light, Mr. Benckini's wrongful death claim cannot survive summary judgment.

## III. CONCLUSION

For the reasons discussed above, the Court denies Mr. Benckini's Motion for Summary Judgment in its entirety and grants the Coopersburg Defendant's Motion for Summary Judgment in its entirety. An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENE C. BENCKINI** | : | **CIVIL ACTION** |
| **t/a** | : | |
| **BENCKINI NURSERIES,** | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 05-5122 |
| | : | |
| **COOPERSBURG BOROUGH et al.,** | : | |
| Defendants | : | |

**ORDER**

_____AND NOW, this 19th day of May 2008, IT IS HEREBY ORDERED that Plaintiff Benckini's Motion for Summary Judgment (Docket No. 49) is DENIED and Coopersburg Defendants' Motion for Summary Judgment (Docket No. 44) is GRANTED.

The Clerk of Court shall hereby CLOSE this case for all purposes, including statistics.

_____BY THE COURT:

S/Gene E.K. Pratter
**GENE E. K. PRATTER**
UNITED STATES DISTRICT JUDGE